George Teagarden Kansas Livestock Commissioner Kansas Animal Health Department 712 S. Kansas Avenue, Suite 4-B Topeka, Kansas 66603-3808
Dear Mr. Teagarden:
As Kansas livestock commissioner, you inquire whether Native Americans who import bison to reservation lands located within Kansas are exempt from state importation health requirements. You express particular concern about importation of bison infected with brucellosis, a highly contagious bacterial disease which causes abortions in bovines.
K.S.A. 47-610 directs the livestock commissioner "to protect the health of domestic animals of the state from all contagious or infectious diseases and for this purpose is hereby authorized and empowered to establish, maintain and enforce such quarantine, sanitary and other regulations as necessary." In accordance with this and other statutory provisions, the Kansas animal health department enacted K.A.R. 9-7-12:
 "Buffalo or bison shall be accompanied by an official health certificate. They shall have passed a negative brucellosis test within the preceding thirty (30) days if six (6) months of age or over."
See also K.A.R. 9-7-1 and K.A.R. 9-7-2 requiring health certificates for livestock imported in Kansas.
The analysis of your question turns on whether the importation requirements regulate off-reservation activity or on-reservation activity. "Absent express federal law to the contrary," Native American tribes and their members are subject to "nondiscriminatory state laws" with respect to off-reservation activities. Mescalero Apache Tribe v. Jones, 411 U.S. 145,93 S.Ct. 1267, 148-49, 36 L.Ed.2d 114, 119 (1973). We have not located any federal law which prohibits or overrides the state livestock importation requirements. Further, because the regulations in question apply to all citizens of the state, the nondiscriminatory element is met. Finally, the regulation at issue applies to the "importation," not the raising of buffalo or bison. In this way, the state is regulating only the off-reservation activity of importation, not the activities that occur once the bison reach the reservation.
It could be argued that the regulation of the importation of buffalo affects the on-reservation activity of raising livestock. However, even with respect to on-reservation activities, a state's laws apply "unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law." Mescalero, 411 U.S. at 148,36 L.Ed.2d at 119. Again, we have not located any federal law that grants or reserves the right of tribes or tribal members to import buffalo or bison onto their reservation. Thus, the only question remaining is whether the state regulations pose an undue burden on tribal self-government. In looking at whether the exercise of state authority over on-reservation activities is justified, the United States Supreme Court has held that "[a] State's regulatory interest will be particularly substantial if the State can point to off-reservation effects that necessitate state intervention."New Mexico v. Mecalero Apache Tribe, 462 U.S. 324, 336,103 S.Ct. 2378, 76 L.Ed.2d 611, 622 (1983). Clearly, the importation of buffalo or bison with a highly contagious disease would have significant detrimental off-reservation effects. Thus, even if it is determined that K.A.R. 9-7-12 and the statutes that authorize it are regulating on-reservation activities, the regulation is justified by the substantial state interest in protecting the health of the state's livestock.
In conclusion, we find that the state health requirements for the importation of buffalo or bison regulate off-reservation activities. Further, in as much as the state health requirements for the importation of buffalo or bison affect the on-reservation activity of raising buffalo or bison, K.A.R. 9-7-12 and its authorizing statutes are necessary regulations justified by the state's interest in preventing the harmful off-reservation effects of diseased livestock. Tribes and tribal members are, therefore, not exempt from these requirements.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:bas